JACKSON, *Appellant*, v. EXECUTORS OF MCLEAN.

1. **Illegal Contract: PUBLIC POLICY: EQUITY.** Parties who own, manage and control a railroad corporation are trustees of the public who contribute to it by the grant of a charter, by donations and by the purchase of its bonds, and a contract made by such owners with the corporation for their own private gain is illegal and against public policy.

2. ——— : ——— : ———. A court of equity will not enforce such a contract nor assist one of the parties in such case who may have been despoiled by the other, but will leave the parties where it finds them, without inquiring whether or not a fraud has been perpetrated.

*Appeal from St. Louis City Circuit Court.*—HON G. W. LUBKE, Judge.

AFFIRMED.

*John M. Dickson* for appellant.

(1) The facts stated in the petition show conclusively that a contract of partnership existed between Jackson and McLean. A partnership may be express or implied from the circumstances of a given case. All the facts stated here point to a relation of partnership between the parties. Collyer on Partnership, chap. 1, sec. 1; Story on Partnership, sec. 13, n. 3; also secs. 20, 21, 22, 23; *Lengle v. Smith*, 48 Mo. 296; *Wear v. Johnson*, 48 Mo. 234; *Whitehead v. Schiekle*, 43 Mo. 537; *Bruisley v. Elliot*, 38 N. H. 287; *Fremann v. Bloomfield*, 43 Mo. 291. (2) The facts stated in petition show that the agreement between McLean and Jackson was not immoral or illegal, nor against public policy. It was not violative of any positive law, or morality, nor did it tend to the injury of the public, or any individual connected with the company. Therefore it should be enforced. Pollock on Contracts [4 Ed.] p. 292; Chitty on Contracts [11 Ed.] p. 982; *Green v. Corrigan*, 87 Mo. 359; *G. C. & S. S. S. Co. v. Kelly*, 77 Ill. ——; *Cook v. Sherman*, 4 McCreary, 20; *Bead v. Miller*, 22 N. E. Rep. 465, and cases cited.

*Rowell & Ferris* for respondents.

(1) The alleged agreements and transactions, set forth in the bill, are immoral, illegal, and in contravention of public policy, and a court of equity will afford

the participants no relief. *Wardell v. Railroad*, 4 Dillon, 330; s. c., 103 U. S. 651; *Thomas v. Railroad*, 1 McCreary, 392; *Tel. Co. v. Railroad*, 1 McCreary, 418; *Cook v. Sherman*, 4 McCreary, 20; *Farley v. Railroad*, 4 McCreary, 138; *Armstrong v. Toler*, 11 Wheaton, 258; *Bartle v. Colman*, 4 Peters, 184; *Tool Co. v. Norris*, 2 Wall. 45; *Hall v. Coppel*, 7 Wall. 542; *Hanauer v. Woodruff*, 15 Wall. 439; *Jackson v. Ludeling*, 21 Wall. 616; *Oscanyan v. Arms Co.*, 103 U. S. 261; *Iron Co. v. Richmond*, 129 U. S. 643; *Gibbs v. Gas Company*, 130 U. S. 396; *Bestor v. Wathen*, 60 Ill. 138; *Railroad v. Kelly*, 77 Ill. 426; *Craft v. McConoughy*, 79 Ill. 346; *Ins. Co. v. Mfg. Co.*, 97 Ill. 536; *Tobey v. Robinson*, 99 Ill. 222; *Ryan v. Railroad*, 21 Kan. 365; *Flint v. Dewey*, 14 Mich. 477; *Dewitt v. Brisbane*, 16 N. Y. 510; *Woodworth v. Bennet*, 43 N. Y. 273; *Fuller v. Dame*, 18 Pick. 473; *Bedford v. Bowser*, 48 Penn. St. 29; *Griswold v. Waddington*, 16 Johns. 485; *Watson v. Fletcher*, 7 Grattan, 1; *Messenger v. Railroad*, 36 N. J. L. 407; *Todd v. Rafferty*, 30 N. J. Eq. 260; *Sampson v. Shaw*, 101 Mass. 149; *Gibbs v. Smith*, 115 Mass. 592; *Snell v. Dwight*, 120 Mass. 9; *King v. Winants*, 71 N. C. 469; *Williamson v. Railroad*, 53 Iowa, 126; *Railroad v. Poor*, 39 Maine, 277; *Railroad v. Blakie*, 1 McQueen H. of L. Cases, 461; *Railroad v. Magnay*, 25 Beavan, 592; *Harrington v. Dock Co.*, 3 Queen's B. D. 549; *Peltz v. Long*, 40 Mo. 532; *Railroad v Seeley*, 45 Mo. 212; *Kitchen v. Greenabaum*, 61 Mo. 110; *Atlee v. Fink*, 75 Mo. 100; *Green v. Corrigan*, 87 Mo. 359; *Tyler v. Larrimore*, 19 Mo. App. 445; *Larrimore v. Tyler*, 88 Mo. 661; *Attaway v. Bank*, 93 Mo. 485; *Jackson v. McLean*, 36 Fed. Rep. 213. (2) The managers of a railway corporation cannot violate the trust reposed in them by the charter; and under the allegations of the bill they owed a duty to the stockholders, creditors and the public whose trust they accepted, of which neither

they nor their successors could divest themselves. *Railroad v. Seeley*, 45 Mo. 212 ; *Cook v. Sherman*, 4 McCreary, 20 ; *Bestor v. Wathen*, 60 Ill. 138 ; *Ins. Co. v. Mfg. Co.*, 97 Ill. 537 ; *Thomas v. Railroad*, 1 McCreary, 392 ; *Wardell v. Railroad*, 4 Dillon, 90 ; *Tel. Co. v. Railroad*, 1 McCreary, 418 ; *Hall v. Coppell*, 7 Wall. 542 ; *Oscanyan v. Arms Co.*, 103 U. S. 291 ; *Tool Co. v. Norris*, 2 Wall. 45 ; *Bartle v. Colman*, 4 Peters, 184 ; *Armstrong v. Toler*, 11 Wheaton, 258 ; *Jackson v. Ludeling*, 21 Wall. 616 ; *Hanauer v. Woodruff*, 15 Wall. 439 ; *Kelly v. Railroad*, 77 Ill. 426.

BRACE, J.—This is an action in the nature of a bill in equity for the settlement of partnership accounts. A demurrer to the bill was sustained, the bill dismissed and judgment rendered for the defendants, from which plaintiff appeals.

The bill, which is very lengthy, in substance, charges: That in March, 1885, the plaintiff and the said James H. McLean entered into a copartnership agreement to build two railroads in the state of Illinois, to be operated together when completed as one continuous line ; and for this purpose to form railroad corporations under the laws of Illinois, the capital stock to be owned by plaintiff and the said McLean in equal parts, the said McLean to furnish the means necessary for the construction of the first twenty-five miles, and the plaintiff to take charge and direct the construction thereof. That said corporation, so to be organized, should issue bonds to be secured by mortgage or deed of trust on all its property and franchises, and, on the completion of the said first twenty-five miles, first mortgage bonds or the proceeds thereof to the amount of fifteen thousand dollars per mile, and stock to the amount of sixteen thousand dollars per mile, should be delivered to said partnership, when there should be a statement and settlement of the accounts of said partnership to that date, and in such settlement the said McLean should receive, from the proceeds of said bonds,

or in bonds themselves at his option at a valuation of eighty-five cents on the dollar, the amount of his cash advances and interest; the remainder of said stock, bonds, and the proceeds thereof, to be equally divided beween plaintiff and the said McLean.

It was further agreed that all donations of lands and subscriptions to said railroad from cities, towns, townships, counties or persons, should inure to the benefit of and become the property of said partnership, and to be accounted for in said settlements; that, in pursuance of said agreement, the said partnership firm in the name of the plaintiff and certain clerks and employes of said McLean, as stockholders, was incorporated under the laws of the state of Illinois as the Carbondale, Metropolis and Paducah Railway Company, with a capital stock of one million dollars "to be used and controlled by plaintiff and the said McLean as an adjunct for the accomplishment of the enterprise for which said partnership was formed, and thereupon, by its nominal officers, the said corporation executed its deed of trust, conveying all its property and franchises to plaintiff and the said McLean to secure the payment of one thousand bonds of one thousand dollars each; that thereafter said corporation under the direction of plaintiff and the said McLean, and in aid of their original scheme for making for themselves the entire profit to be earned from the construction of said road, entered into a contract with the said partnership concern in the name of certain parties acting for said copartnership concern, by which said concern in the name of said parties agreed to construct said railroad for the whole of the bonds, stock and donations of land and subscriptions and all subsidies that might come into the possession of said company, the said McLean to provide the means for carrying on the work of construction and to handle the bonds at not less than eighty-five cents on the dollar. That these parties representing said copartnership concern in said contract were financially

Jackson v. Ex'rs of McLean.

irresponsible, and signed said agreement at the request of and as the agents of plaintiff and defendant.

That afterwards the plaintiff and the said McLean, by virtue of said contract, carried on the work of constructing said railroad under said contract, until about the seventh of November, 1885, when the plaintiff was by his said partner unwarrantably excluded from the said partnership concern and from all control of its business. That thereafter twenty-five miles of said road was approximately completed under said contract. That the assets of said company and of said partnership are in the hands of the said McLean; that by virtue of said contract he has received three hundred and seventy-five thousand dollars, the proceeds of the sale of the first mortgage bonds of said railroad company, and other large amounts in cash, labor, land and bonds given as subscription and subsidies in aid of said enterprise, making a large amount in excess of the cost of the construction thereof; that the said McLean has possession of all the books and accounts of said partnership, and has refused to recognize the rights of plaintiff as a partner, or render him any account of his interest in such profits, and prays for an account, the appointment of a receiver, etc., etc.

The profits which the plaintiff in his bill asks the court to take an account of, and out of which he asks that a share be ascertained and rendered him, he alleges grew out of a contract which he and his partner made with a corporation created by the state of Illinois, of which he and his partner were in fact the owners; combining within themselves the multifarious relations of stockholders, mortgagees, directors and officers. With the plenary powers with which these relations invested them, they enter into a contract with themselves to construct a railroad by which all the assets of the corporation are to be transferred to them as a consideration for the construction of the road. As a corporation, they issue to themselves certificates of

Jackson v. Ex'rs of McLean.

stock, and issue first mortgage bonds, solicit and obtain subscriptions in money, lands, work and bonds from counties, towns and cities; as directors and officers, they deliver these assets to themselves as contractors; as contractors, they go upon the market, sell a part of the bonds, convert the subscriptions into cash, and make a large profit; and this is the profit which a court of equity is asked to apportion between these schemers. That it will not assist one who, in the operation of such a scheme as this, may have been taken advantage of by his partner, and who may have obtained more than his portion of the common spoil, would seem to be demanded by the plainest dictates of a public policy, that would foster ordinary common honesty. As a corporation, these parties owed to the people of the great commonwealth, which gave it corporate existence, to the people along its line who gave their means to assist in its construction, to those who might become stockholders on the faith of its value, and to their *cestui que trust*, the purchasers of its bonds, the duty of getting for them the best road possible for the least amount of money. The natural promptings of self interest to them as contractors, on the other hand, was to get the most money possible for the least road. No fair honest contract, as a rule, could be expected from such a conflict of duty and interest. Therefore, courts of equity refuse to enforce such contracts or to assist a party to recover the spoil that may have been secured by the execution of such a contract. Without stopping to inquire in a given case whether a fraud has actually been perpetrated or not, the law leaves the parties where it finds them. The conclusion reached by the trial court in this case is, we think, amply sustained by the principles announced and maintained in the cases cited by counsel for the respondent in their brief. The judgment of the circuit court is affirmed. All concur, except BARCLAY, J., dissenting.