FLAHERTY v. CARY et al.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. CONTRACTS—INDEFINITENESS—VALIDITY—POLICY.
   Defendants, a firm of attorneys, agreed to assist plaintiff in organizing a mortgage insurance company, and to accept as stockholders only those who would consent that plaintiff should be employed as general agent of the corporation when formed, at a fixed salary, and should have full control of the solicitation of insurance and the employment of subagents for that purpose. The contract was to continue during the life of the corporation, unless terminated by either party on six months' notice, on certain conditions. *Held*, that the contract was too indefinite to be enforceable.

2. SAME—PUBLIC POLICY.
   The contract was void, as against public policy, in attempting to use the corporation laws for plaintiff's private advantage, and as preventing the directors from performing their statutory duties to the stockholders and creditors of the corporation.

Appeal from trial term, New York county.

Action by Robert Flaherty against Clarence Cary and others. From a judgment of nonsuit, plaintiff appeals. Affirmed.

The action was brought to recover $50,000 for an alleged breach of contract. The defendants are attorneys and counselors engaged in the practice of their profession as co-partners in the city of New York. The plaintiff alleges that on the 4th day of December, 1891, he applied to defendants for their assistance in organizing and incorporating a mortgage insurance corporation according to a plan which he had devised, which contemplated the insuring of the principal and interest of moneys loaned on bonds and mortgages; that plaintiff and defendants entered into an agreement in and by which defendants agreed, in substance, to procure the incorporators and directors or trustees "on or before or during the following summer, and to procure for plaintiff from such company" a contract as sole general agent, entitling him to receive a commission of 30 per cent. on all premiums received by the company, out of which he was to pay commissions to subagents to be employed by him, and that he was to be paid, in addition to said commissions, for services rendered in organizing the company, and for such services as he might render to the company, the sum of $5,000 during the first year of the company's existence, but said sum was to be refunded to the company in the event that his commissions exceeded that amount; that such contract between the plaintiff and the company was "to continue in force during the life of such company," either party to have the privilege of terminating it on six months' notice, in which event he was to continue to receive a like percentage of all premiums on the continuation or renewals of policies then in force so long as such premiums should be paid; that the company was to have the privilege of commuting such renewals by paying a sum to be agreed upon by arbitration, based upon the likely continuance of the policies; that defendants agreed to act as counsel for plaintiff in the organization of the company and in drawing his contract therewith; that defendants agreed that they would not allow any person to become a stockholder, trustee, director, or incorporator of the company who would not, as a condition precedent, agree to plaintiff's becoming such sole general agent upon said terms; and that the plaintiff agreed to procure, and did procure, for said company a suitable man for president, and agreed to sell, and did offer to sell, the stock to be issued by it, and to procure for defendants the general counselship of such company, and that he would not allow any person to subscribe for stock who would not agree, as a condition precedent thereto, that defendants should become such general counsel on such terms as they might propose. It is further alleged in the complaint that defendants wholly failed to keep their agreement with him, and willfully and wrongfully repudiated the same, and at once during the year 1892 proceeded to organize and promote a company, with the result that in the early part of the year 1893 they organized and were instrumental in incorporating the Lawyers' Mortgage Insurance Company, which was intended to do, and is actually engaged in doing, "the very line of insurance which plaintiff had devised"; that defendants wholly failed to use their influence for plaintiff in obtaining the general agency of said company, and never submitted or disclosed to the directors, stockholders, or trustees or incorporators that he was the general organizer and promoter thereof, or their said agreement with him, and did not procure or attempt to procure such contract from said company, and refused to permit him to sell its stock. The complaint contained the further allegation that plaintiff's plan of insurance, which is neither disclosed in the complaint nor in his testimony, was theretofore unknown in the state of New York, and that prior to the making of said contract with defendants he spend 18 months in visiting influential institutions and influential men of affairs while in said city, explaining it and paving the way for the organization of such a company. Plaintiff was the only witness sworn upon the trial. He testified, in substance, to having previously exploited his ideas concerning a plan of insurance substantially as alleged. It appears from his testimony that his proposed plan of insurance was not novel, but was along the lines conducted by a company in England of which defendants were general counsel, and with which they

were apparently familiar. He made no secret of his plan, and informed defendants fully thereof before he had been given any assurance that they would become interested therein, and also informed them, in substance, that he had disclosed his plan to every financial man with whom he could get an introduction or an interview. According to his testimony, his proposition to defendants was substantially as the agreement is alleged in the complaint, excepting that the terms of his proposed contract with the company were to be submitted by him and formulated by them later; but the only agreement he proved on the part of the defendants was to take the matter up on the terms proposed by him, and give him such assistance as they could in the organization of the company if he would get a suitable man for president, to which he assented. Subsequently, and on the 26th of January, 1892, plaintiff wrote a letter to defendants, suggesting the terms of the contract which he desired with the new company. He testified that defendants a few days thereafter assented to the terms of the agreement as thus proposed by him. This completed the alleged contract so far as it ever was completed between the plaintiff and the defendants. Subsequently, and on the 7th day of April, 1892, he wrote defendants a letter suggesting that, in the prospectus to be issued, a clause be inserted with reference to his employment by the company, and that defendants, as attorneys or trustees for the company to be formed, enter into a contract with him therefor. His suggestions were not assented to, and no such agreement was made. About this time, as he testifies, a clash came between him and defendants, which in the following July or August resulted in the breaking off of all negotiations between them. Prior to this time there had been some unsuccessful efforts by plaintiff and defendants to have the insurance law changed, but no attempt had been made to incorporate a company. Plaintiff offered to show that the Lawyers' Mortgage Insurance Company was incorporated on the 16th day of January, 1893, and that they incorporated no other company. This evidence was excluded, and plaintiff excepted. No proof was presented as to whether or not the defendants made any effort to incorporate a company in accordance with the agreement alleged and testified to by plaintiff, or as to whether that could be done. No request was made by plaintiff to go to the jury upon the question as to whether the defendants acted in good faith in dissolving and abandoning the relationship of co-promoters with him. Plaintiff offered to show, as a basis for his damages, the premiums received by the Lawyers' Mortgage Insurance Company. This offer was excluded, to which he excepted. He did not prove or offer to prove any other damages.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

A. C. Palmer, for appellant.

Willard Parker Butler, for respondents.

LAUGHLIN, J.   Plaintiff failed to prove a cause of action, and his complaint was properly dismissed. Defendants did not agree absolutely to form a corporation, or to secure a contract therewith for plaintiff as its sole general agent. They merely agreed to assist him in accomplishing these things. It does not appear that they could have formed a corporation composed of stockholders who would agree in advance to the company's employing plaintiff on the extraordinary terms proposed, and it is extremely improbable that it could have been done, even if authorized by law. Even if the stock could have been sold subject to the agreement, these conditions would not have been binding upon or enforceable against the directors, who, especially in a company of this character, organized to carry on an insurance business, would owe a duty to the public as well as to the stockholders,—to conduct the business and affairs of the corporation ac-

cording to their judgment as to what would be for the best interests of all concerned. Bliss v. Matteson, 45 N. Y. 22; Snow v. Church, 13 App. Div. 108, 42 N. Y. Supp. 1072; West v. Camden, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254; Fennesey v. Ross, 5 App. Div. 342, 39 N. Y. Supp. 323. The contract was unenforceable for lack of definiteness. We are unable to determine from the contract where or under what laws the company was to be incorporated. If under the laws of this state, as might be inferred from the testimony relating to the efforts of the parties to have the insurance laws amended, subscriptions for stock upon such conditions as those embodied in plaintiff's agreement with defendants would have been void. Road Co. v. Payne, 15 N. Y. 583; Electric Co. v. Wightman, 3 App. Div. 118, 39 N. Y. Supp. 420; Dix v. Shaver, 14 Hun, 392; Craig v. Town of Andes, 93 N. Y. 405–414. Nothing is stated as to the amount of capital stock, the number of directors, the scope of the operations of the company, or as to the form or manner in which the assent of stockholders to the plaintiff's employment upon these conditions was to be secured. The terms and condition of the employment of defendants as counsel for the corporation were never agreed upon. We find no cases exactly in point, but there are many cases where contracts more definite have been declared unenforceable either in an action at law or a suit in equity. United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527; Sourwine v. Truscott, 17 Hun, 432; Van Shaick v. Van Buren, 70 Hun, 575, 24 N. Y. Supp. 306; Milliman v. Huntington, 68 Hun, 258, 22 N. Y. Supp. 997; Bennett v. Egan, 3 Misc. 421, 23 N. Y. Supp. 154; Snow v. Fertilizer Co., 58 Hun, 134, 11 N. Y. Supp. 492; Davie v. Mining Co., 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; Sherman v. Kitzmiller, 17 Serg. & R. 45; Marble v. Oil Co., 169 Mass. 563, 48 N. E. 783. The contract was also void as against public policy. It was an attempt on the part of plaintiff to use the corporation laws for his special benefit and advantage. The law requires that subscriptions to the original issue of capital stock shall be paid for in money or property, and the directors are authorized to open subscription books and receive subscriptions for such stock (section 41, Stock Corp. Law; chapter 688, Laws 1892); but plaintiff by his agreement seeks to ingraft additional conditions. The agreement contemplated precluding any person from becoming a stockholder who would not agree in advance, in addition to paying cash for his stock, that plaintiff should be employed during the entire corporate existence, subject to the termination of the contract on six months' notice, and that he should receive for his services nearly one-third of the gross receipts of the company, not only while he continued in its employ, but a like percentage thereafter of the premiums on policies then in force, and on policies in renewal thereof. He was a comparative stranger in New York, having come here from Canada within two years. The directors were to have no option but to employ him on these terms, even though, in their opinion, his services might be of no value to the corporation. He was to have exclusive charge of soliciting and securing business for the company. It is difficult to see how the directors could perform their statutory duty of managing and controlling the affairs of the corporation in the in-

terests of the stockholders, its policy holders, and other creditors, if they were to be thus limited and restricted by this contract. Fisher v. Bush, 35 Hun, 641; Brown v. Britton, 41 App. Div. 57, 58 N. Y. Supp. 353; Dickson v. Baker (Minn.) 77 N. W. 820; Jackson v. McLean's Ex'rs, 100 Mo. 130, 13 S. W. 393; West v. Camden, 135 U. S. 507, 10 Sup. Ct. 838, 35 L. Ed. 254; Fennesey v. Ross, 5 App. Div. 342, 39 N. Y. Supp. 323; Cook, Corp. (4th Ed.) § 622.

Appellant, with apparent confidence, relies upon the cases of Lorillard v. Clyde, 86 N. Y. 384, 10 L. R. A. 113, and King v. Barnes, 109 N. Y. 267, 16 N. E. 332, as sustaining the validity of this contract. These authorities are distinguishable from the case at bar. In the Lorillard Case, plaintiff and a firm of transportation competitors agreed to form a corporation, each to contribute one-half the capital and to receive one-half the stock, and upon the understanding that the firm was to manage the corporation in good faith and with economy, and to guaranty 7 per cent. dividends to plaintiff. The agreement was fully performed, except payment of the dividends, which the action was brought to recover on the guaranty. It was held that the agreement, being between parties who were to and did contribute the entire capital stock, was binding upon them, but that it might not be binding upon the directors. In the King Case a corporation was organized as contemplated by the parties who made the preliminary agreement. That was a suit in equity for an accounting, and the delivery of stock which defendant had received for plaintiff pursuant to the agreement, which had in all other respects been fully executed. The court based the decision upon the ground that the contract had been executed. This is shown by the opinion, which says:

"What might have been the remedies of the parties to this contract if it had remained unexecuted, and there had been a breach thereof, is quite unnecessary to inquire, inasmuch as the contract was subsequently executed, and large sums of money were advanced and expended upon the faith of it in the formation of the corporation, and in the purchase of the lands intended to be used in the contemplated enterprise."

No competent evidence of damages was given or offered, and, if plaintiff established the breach of a valid contract, we would not be required to reverse in order to enable him to recover merely nominal damages.

The judgment should be affirmed, with costs.

PATTERSON, J. I concur on the ground that there was no contract enforceable against Cary & Whitridge.

HATCH, J. I concur in the result reached by Mr. Justice LAUGHLIN in this case, upon the ground that the contract is so indefinite and uncertain as to be unenforceable. It was not averred in the complaint, or proved on the trial, that the efforts of the defendant to organize the corporation, such as was contemplated, were or would have been successful, in consequence of which no cause of action was either averred or proved. It is evident that no damages can be predicated of a breach of such a contract. The whole matter is so speculative and uncertain that no enforceable right is established by the

proof. Upon the other matters discussed in the opinion of Mr. Justice LAUGHLIN I express no opinion. The judgment should be affirmed, with costs.

O'BRIEN and McLAUGHLIN, JJ., concur.