## MUD VALLEY OIL & GAS COMPANY *v.* HITCHCOCK ET AL.

[No. 5,852.   Filed April 30, 1907.]

1. CHAMPERTY AND MAINTENANCE.—*Words and Phrases.*—"*Maintenance.*"—"Maintenance" imports an officious intermeddling in a suit that does not belong to one, by maintaining or assisting either party.   p. 109.

2. SAME.—*Words and Phrases.*—"*Champerty.*"—"Champerty" imports a bargain with a party to a suit to divide the matter sued for in consideration of the payment of the expenses of such suit. p. 109.

3. CONTRACTS.—*Champertous.*—At the common law champertous contracts were unenforceable, and, with some modifications, such rule is in force in Indiana.   p. 109.

4. SAME.—*Champertous.*—*Good-Faith.*—A contract by which the second party thereto agrees to prosecute a suit for the first parties, against such first parties' lessee, at his own expense, in consideration of a certain share in the oil under such first parties' farm, such oil being under lease to another, to the second party's knowledge, cannot be enforced, unless shown to be above any suspicion as to stirring up strife and litigation.   p. 110.

From Delaware Circuit Court; *H. J. Paulus,* Special Judge.

Action by the Mud Valley Oil & Gas Company against William H. Hitchcock and another.. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*George H. Koons,* for appellant.

*Joseph S. Dailey, Abram Simmons, Frank C. Dailey, Roscoe C. Griffith* and *James A. Ross,* for appellees.

MYERS, C. J.—Appellant, in the court below, sought to recover damages from appellees on· account of an alleged breach of a certain written contract. The complaint is in two paragraphs. Errors are assigned on the action of the court in sustaining the demurrer of each appellee to each paragraph of the amended complaint, and in rendering judgment for the appellees on the demurrers.

It is agreed that the only debatable question in this case arises on a contract, made a part of each paragraph of the complaint, which appellees insist is champertous, or so tainted with champerty or maintenance as to render it illegal and void, and its enforcement contrary to public policy. That part of the contract pertinent to the question here for decision reads as follows:

"In consideration of the sum of $1, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, we, William H. Hitchcock and Violet I. Hitchcock, his wife, of the town of Selma, the first party, agree to execute a lease to J. Walter Baird, of Muncie, Indiana, second party, his heirs or assigns, on eighty-five acres of our farm for oil and gas purposes [here follows description], on the following conditions:

(1) That said J. Walter Baird, second party, or his assigns, is to pay us a bonus of $100, payable at the Parker City Bank of Parker City, Indiana. (2) One-sixth part of all the oil produced and saved therefrom in tanks or pipe-lines free of charge to the first party. (3) Also $100 per year for each well from which gas is found on the premises in paying quantities. * .* *

(10)  This option is given with the understanding, and as a part of the consideration, that the second party shall prosecute with due diligence and care a suit to quiet the title to the above-described premises against a lease formerly given on said premises to the Woodbury Glass Company, and it is hereby understood and agreed that all the expenses of said suit shall be paid by the second party, and that said first party shall not be out a penny.  This option is good for seventy-five days, and as much longer time as is actually needed to prosecute said suit to successful completion, and no longer unless bonus money is paid.  First party agrees not to accept rental under a lease given to the Western Reserve Oil Company, and mentioned herein.''

From the averments of each paragraph of the complaint, it appears that William H. Hitchcock was the owner of the real estate described in the contract, and that Violet I. Hitchcock was his wife; that appellant, by assignment from J. Walter Baird, became the owner of his interest in said contract; that appellees, after the execution of the contract in suit, and, as appellant believed, in good faith, selected, counseled, and advised with attorneys and authorized and directed said attorneys to bring and prosecute a suit in the name of appellee William H. Hitchcock to quiet the title of said land against the lease mentioned in the tenth clause of said contract; that, with the consent and under the direction of appellees, said attorneys instituted said suit in the Delaware Circuit Court; that appellant, in compliance with the contract in suit, assumed the payment of all expenses in the prosecution of said suit to quiet title, and on account thereof paid the sum of $50; that, before the beginning of said suit to quiet title, said lease had expired by its own limitation, and was of no force or effect, but constituted a cloud upon the title of said real estate by reason of its being of record; that appellees, desiring to have the title to said land freed from what purported to be a cloud thereon, demanded and required of appellant's assignor, and as a part of the consideration for said lease, and as an additional bonus and compensation to the other stipulations therein, the

payment of the cost and expenses of a suit to quiet said title; that while said suit was being prosecuted with due care and diligence, and to the satisfaction of appellees, and as fast as possible to a successful completion, they (appellees) entered into an agreement with the defendants therein, whereby and pursuant thereto and in violation of their said contract with appellant, arbitrarily and without any cause therefor, and over the objection and protest of appellant, said William H. Hitchcock, at his own instance and at the instance, request, and by the procurement of his wife, went into court and dismissed said suit and prevented appellant from further prosecuting it; that said suit to quiet title was being prosecuted for the use and benefit of appellees, and for the use and benefit of this appellant, by reason of its *bona fide* interest in said cause of action, and in the oil underlying the surface of the land, in the proportion of five-sixths to one-sixth, which a successful prosecution of said suit would make clear the title to the oil and gas interests so contracted and agreed to be granted and leased to it; that appellant, as assignee of said J. Walter Baird, has performed and complied with all the conditions and stipulations in said contract to be performed by the second party therein, and without any expense whatever to either of the appellees; that appellees refuse to perform their part of said contract, and refuse to execute said lease, as in said contract provided, to the damage of appellant. It further appears that the contract was executed February 16, 1904; that it was assigned by Baird to appellant March 2, 1904; that the lease mentioned in clause ten thereof belonged to the Western Reserve Oil Company, and did not expire by its own limitation until March 10, 1904; that the suit to quiet title was begun March 16, 1904.

The second paragraph of complaint contains a copy of the lease executed by appellees to the Woodbury Glass Company, with averments in reference thereto to the effect that the same was not in force, it having expired by its own limita-

tion, and averring the noncompliance by the lessee or any assignee thereof with the terms and conditions of said lease within the limitation in said lease fixed and to be fixed and complied with on the part of lessee.

Returning to the question for decision, it will be observed that maintenance is defined to be "an officious intermeddling in a suit that in noway belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it. Anderson's Law Dict.; 2 Chitty, Crim. Law (4th Am. ed.), *234, note (a).

Champerty is said to be "a species of maintenance, 'being a bargain with the plaintiff or defendant to divide land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry the party suit at his own expense.'" 2 Words and Phrases, 1047. It is "the unlawful maintenance of a suit in consideration of some bargain to have a part of the thing in dispute or some profit out of it." Anderson's Law Dict. It is the aiding of a litigant, with money to prosecute or defend his suit, by a stranger having no interest, direct or remote, immediate or contingent, upon an agreement with the party in interest whereupon such stranger is to receive a part of the thing in dispute. *Stotsenburg* v. *Marks* (1881), 79 Ind. 193; *Quigley* v. *Thompson* (1876), 53 Ind. 317. Maintenance and champertous contracts are unenforceable at common law. In the early stages of the English law, maintenance and champerty were defined as offenses. Blackstone speaks of the offense of maintenance as a practice which perverts the process of the law into an engine of oppression. 4 Blackstone's Comm., *135. The purpose of the early English law on the subject of maintenance and champerty was to check the power and influence of the great men felt in the administration of justice, and who, by reason of such influence, would receive, and by reason thereof did obtain, interests in questionable or latent titles and rights in land, and in consideration of such interest carried on litiga-

tion to establish such pretended right or title, to the oppression and injury of those justly entitled to the equal protection of the process of the law. It was this peculiar state of society which established the laws for the control of the evil growing out of such transactions. But at this day the growth of the law and the administration thereof has in fact established an entirely different state of society, and to a great extent excluded transactions, which, in olden times, were made offenses. While this is true, in this jurisdiction the common-law doctrine, with some restrictions, as applied to maintenance and champerty, is recognized and enforced. *Board, etc.,* v. *Jameson* (1882), 86 Ind. 154; *Cleveland, etc., R. Co.* v. *Davis* (1894), 10 Ind. App. 342; *Hart* v. *State* (1889), 120 Ind. 83, 85.

· The case at bar is founded upon an executory contract which is said to be champertous. It expressly provides for the bringing of a suit to quiet title to the oil and gas

4.  covered by a lease theretofore executed. It further stipulates that such suit shall be carried on at the cost and expense of appellant. It stipulates for a division of the subject-matter in suit between the parties thereto in case the suit is successful. It has all the elements found in the definition of champerty. Such contracts, when called in question, even in the light of modern authority, will not be approved and enforced by the courts unless shown to be above suspicion of ·a purpose of stirring up baseless strife and litigation, or of harassing others with suits, which otherwise would not be commenced, or for spoil or speculation. *Peck* v. *Heurich* (1897), 167 U. S. 624, 630, 17 Sup. Ct. 927, 42 L. Ed. 302, and cases cited; *Belding* ·v. *Smythe* (1885), 138 Mass. 530; *Lancy* v. *Havender* (1888), 146 Mass. 615, 16 N. E. 464; *Scobey* v. *Ross* (1859), 13 Ind. 117; *Coquillard* v. *Bearss* (1863), 21 Ind. 479; *Gilbert* v. *Holmes* (1871), 64 Ill. 548, 555; *Miller* v. *Larson* (1865), 19 Wis. 463. In view of the provisions of this contract, appellant properly assumed the burden of stating facts showing an entire good-

faith transaction, one entirely free from officious inter-meddling, and not within the rules of champerty against speculation in law suits, and for the suppression of gambling in doubtful claims.

From the facts stated in each paragraph of the complaint, it will be seen that, at the time of the execution of the contract, appellant's assignor had no claim or interest, either direct or remote, present or contingent, or because of consanguinity or affinity or other relation in the subject-matter in contest. In the first paragraph there is no claim that the lease was invalid at the time the contract was executed. In the second paragraph, in addition to the averment that the lease had expired by reason of its own limitation, it is averred that the lease was invalid because its conditions had not been complied with on the part of lessee within the limitation of the lease. It also appears from each paragraph that the lease did not expire by its own limitation until March 10 following the execution of the contract on February 16.

It will also be observed from a copy of the Woodbury lease, set out in the second paragraph, that while it was for a term of two years, beginning March 10, 1902, it might be extended for "as much longer as oil and gas are produced in paying quantities or rentals paid thereon," also providing that if no well is completed within thirty days from date the grant shall be void, unless lessee shall pay fixed acreage rental for the time a completion of a well is delayed. It does not appear that the landowners ever attempted to take any advantage of this latter provision in the lease, or demanded of lessee the payment of any rentals prior to instituting suit to quiet their title. The lease does provide for an extension by the payment of rentals, and the contract in suit stipulates that the "first party agrees not to accept rental under a lease given to the Western Reserve Oil Company, and mentioned herein." From this latter provision in the contract, it would seem that the parties to it recog-

nized the provision in the lease for its extension by the payment of. rentals, and against which such stipulation was made because of the contemplated suit, and for the purpose of cutting off the right of the then lease holder to the extension privilege. It must be admitted that the facts here show that both parties to the contract had in mind the bringing of a suit, with a view of pecuniary advantage to be derived from the very thing covered by the lease to be by that suit declared invalid, and to which appellant was an entire stranger, except the interest a successful suit, followed by a lease, would give it. The contract gave appellant no interest in the oil and gas or the right to enter upon appellees' land. Such interest and right was made to depend on a lease, the execution of which depended upon the successful prosecution of the suit to quiet title. With all reasonable presumptions against the pleader, this case, as made by the complaint, does not, in our opinion, meet the requirements of the law requiring such transactions to be in good faith and free from oppression of the rights of another. From this conclusion it follows that the contract in question was against sound public policy, and within the mischief to be guarded against in the administration of justice, and therefore unenforceable.

In the disposition of this case, we are not unmindful of the legal principles supporting property rights, and the right of disposition of that which the owner may lawfully sell, together with the right of the purchaser to all remedies the law may afford to enable him to possess and enjoy the subject of his purchase. These principles are based upon the policy of the law favoring peaceful and undisturbed enjoyment of property rights, and against agitation of such rights brought about by speculative litigation, as here exhibited by the complaint. Counsel for appellant has called our attention to many decisions and presented an ingenious argument in support of the contention that the contract before us is not one to which the laws governing champerty

should be applied, but, after a careful examination of the various decisions cited, it is our opinion that each case is made to rest upon facts precluding the element of a meddling stranger to the subject in litigation. In some of the cases the interest shown was exceedingly remote, but nevertheless there was some traceable interest or benefit to be derived from the litigation existing at the time the contract averred to be champertous was made. The conclusion reached on the controlling question in this case supports the ruling of the court below.

Judgment affirmed.