## MILLER VS. LARSON.

The law will not aid in enforcing an unlawful contract, nor give damages for a breach of it.   Neither will it assist a party in recovering back money which he has expended in the unlawful execution of such a contract.

It is only where a contract to do an unlawful act remains wholly unexecuted, that the party for whom it is to be done can rescind and recover the consideration.

The defense in ejectment was, that plaintiff and defendant, on &c., had entered into an agreement as follows:  Plaintiff being in possession of a tract of land of which the premises in dispute were the east half, and having a pre-emption right thereto, and K. having fraudulently acquired the legal title to the south half of said tract, plaintiff agreed to sell an undivided half of said tract to defendant, and to convey it to him when he (plaintiff) should get title to the land; and in consideration thereof defendant agreed to pay the plaintiff's costs and expenses in a suit to be brought against K. to vest his title in plaintiff.   Plaintiff accordingly put defendant in possession of the undivided half as tenant in common with himself of the whole tract, but by mutual agreement plaintiff was to occupy and improve the west half and defendant the east half of the tract; and defendant had ever since been in possession under this arrangement, and had paid the costs and expenses of a suit by plaintiff against K. in which judgment was rendered vesting in plaintiff K.'s title.  *Held,*

1.  That the agreement between the parties was champertous, and the defendant could not have maintained an action or counter-claim for a specific performance of it, or to recover the money which he had expended under it.

2.  That the agreement having been executed, and plaintiff having acquired title through it, the law would not interfere in his behalf to restore to him possession of the premises.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, commenced 16th April, 1863, for the east half of the west half of the south-west quarter of a certain section in said county.   The answer set up as a defense the following facts:   On the 1st of March, 1858, plaintiff was in possession, with right of pre-emption, of the whole of the west half of the south-west quarter of said section, containing eighty acres. Before that time one Kellogg had, in fraud of plaintiff's rights, procured from the state a patent of the south-west quarter of said south-west quarter section, and claimed to be the owner thereof.   Plaintiff desired to commence an action in said circuit court to vest in himself the title and interest which Kellogg had acquired in said quarter-quarter section by virtue of

said patent; but being poor and unable to pay the expenses of such an action, he applied to the defendant for pecuniary assistance in prosecuting said action, and they entered into an agreement whereby plaintiff agreed to sell defendant an undivided half of the west half of said south-west quarter section, and convey the same to him when plaintiff should get title to the land; in consideration whereof defendant agreed to pay the plaintiff's costs and expenses in such contemplated action against Kellogg. Said action was accordingly commenced June 14, 1858, and a judgment rendered therein September 26, 1859, vesting in *Miller* all Kellogg's title to and interest in said quarter-quarter section, but requiring that *Miller* should pay into court fifty dollars, which sum was thereupon paid into court for the plaintiff by *Larson.* The latter also paid other costs and expenses in said suit amounting to $150; and at the time of the agreement aforesaid he was put into possession of the undivided half of plaintiff's eighty, and held possession as tenant in common with plaintiff of the whole eighty, but by mutual consent plaintiff occupied the west half of said eighty and made improvements thereon, while defendant occupied the east half (being the premises in dispute) and made permanent improvements thereon, before the commencement of this action, of the value of $300.

On the trial, the plaintiff, having read the pleadings and rested, objected to the admission of any evidence for the defendant, on the grounds that the agreement set up in the answer as a defense was champertous and void, and that it was also within the statute of frauds. The objection was overruled. Evidence was then introduced for each party. There was evidence which was relied upon by the plaintiff as showing that the agreement on the part of defendant was to secure for plaintiff the legal title to the whole eighty, but that he had secured the title to only the south forty. The court charged the jury, among other things, that if the facts set up in the answer were true, and if the de-

fendant had performed all the conditions of the contract to be performed on his part, the plaintiff could not recover. The jury found for the defendant; and from a judgment upon the verdict the plaintiff appealed.

*Whittemore & Weisbrod,* for appellant, referred to a former decision in this case (17 Wis., 624) as showing that the plaintiff's title was admitted by the pleadings, and the burden of showing an equitable title was upon the defendant; and therefore the maxim *"potior est conditio defendentis"* applied in favor of the plaintiff. Where the action is in affirmance of an illegal contract, and to enforce the performance of an engagement prohibited by law, it can in no case be maintained; but where the action proceeds in disaffirmance of such a contract, and, presuming it to be void, seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that the plaintiff should recover. 2 Com. on Con., 109; *Morgan v. Groff,* 4 Barb., 524; *Cotton v. Thurland,* 5 Term, 405; *Smith v. Bickmore,* 4 Taunt., 474; *Hastelow v. Jackson,* 8 Barn. & Cress., 221; *Vischer v. Yates,* 11 Johns., 29, 30; *Yates v. Foot,* 12 id., 13; *Utica Ins. Co. v. Kip,* 8 Cow., 20; *Munt v. Stokes,* 4 Term, 564; *Lowry v. Bourdieu,* Doug., 470. The plaintiff in this case claims nothing under the contract, but seeks to disaffirm it and recover the possession of the premises of which he holds the legal title; while the defendant seeks to affirm the illegal contract.

*George Gary,* for respondent, argued that if the plaintiff had delivered possession of the premises to the defendant under an illegal contract, the maxim *potior est conditio defendentis* would apply, and the law would leave the parties where it found them, especially if defendant had executed his part of the contract. *Holman v. Johnson,* Cowp., 343; *Vandyck v. Hewitt,* 1 East, 96; *Lubbock v. Potts,* 7 id., 449; *Nellis v. Clark,* 4 Hill, 424; *Perkins v. Savage,* 15 Wend., 412; 20 id., 26; *McCullum v. Gourlay,* 8 Johns., 147; *Burtle v. Coleman,* 9 Cur-

tis, 45 (4 Peters, 184); 6 Wis., 148; 14 Ind., 25; 9 Vt., 310; 10 id., 338.

*By the Court,* DIXON, C. J.   There can be no doubt as to the champertous nature of the agreement.   The difficulty is to determine how it affects the plaintiff's action.   It is set up as a defense, not as a counter-claim.   If it had been stated as a counter-claim and affirmative relief demanded, or if the defendant had brought suit for a specific performance or to get back the money which he has expended under the contract, in neither case could he have recovered.   The reason why the defendant could not have recovered is obvious.   The law will not aid in enforcing an unlawful contract, nor give damages for a breach of it.   Neither will it assist a party in recovering back money which he has expended in the unlawful execution of such contract.   The question is whether the plaintiff is not in the same position with regard to the possession of the land.   We think that he is, and that there can be no recovery in this action.   The plaintiff's title and the defendant's possession of the land came through the same champertous contract.   The plaintiff obtained the title by means of the partial, if not the full performance of the contract by the defendant; and the defendant was put into the possession in part execution of the same contract by the plaintiff.   It is difficult to perceive how, under such circumstances, the condition of the plaintiff can be better than that of the defendant; or how the plaintiff, in disaffirmance of the contract, can sue for and recover the possession of the land, and yet that the defendant cannot, in disaffirmance also, sue for and recover back the money he has expended, nor the value of the permanent improvements made by him upon the land.   That both propositions should be true seems quite inconsistent with correct ideas of law and justice.   The truth of the latter seems to prove the falsity of the former.   The right and obligations of the parties to such a contract, whatever they may be, ought to be

the same. If one is not bound the other ought not to be; and if one cannot rescind and recover back, the other should not. The maxim *in pari delicto potior est conditio possidentis* should be applicable alike to each; and we think that it is. The law, which is just in its vindication of the rights of the innocent, is also just in its resentment of the conduct of the guilty. It does not afford a remedy to one of two equally guilty parties, and deny it to the other under precisely the same circumstances.

The plaintiff's counsel admit the champerty, but insist that it is no defense because the plaintiff sues in disaffirmance of the contract. But it is too late for the plaintiff to disaffirm. The contract has already been *executed*, if not wholly, at least partially, by both parties. It is only where the contract is *executory* that a rescission and a recovery are allowed. If it has been partially executed, and money or labor expended on one side and land or property delivered on the other, *in part performance of it*, as to such part performance the condition of the parties is the same as if it had been fully performed. The law will not aid either party to undo what was so unlawfully done; but as a punishment to the plaintiff for his unlawful participation, it refuses him all remedy. It is only when the contract is wholly unexecuted, and by way of anticipating and preventing the wrong, that the party can rescind. Money deposited in consideration of some unlawful act *to be done*, may be recovered back. In such case nothing having been done under the contract by the party against whom the action is brought, and the party suing not having participated in the performance of any unlawful act, nor derived any benefit or advantage from the contract, the action may be maintained. The contract is then regarded as purely executory. But where the contract has been executed in whole or in part, it is obvious that the object of the law in allowing the action cannot be attained. Here the contract has been executed as to one forty acres of the land at all events. The plaintiff per-

mitted the defendant to litigate in his name—assisted him in doing so—and having acquired the title at the expense of the defendant, now proposes to rescind. He comes into court, himself fresh from the work of transgression. Having gained all that he can from the performance of that contract, he proposes to gain still more by avoiding it. He proposes to vindicate the majesty and justice of the law by depriving the defendant of what he has gained—by turning him out of the possession. We are very confident that he cannot do so, and that the judgment below is right.

The law is correctly stated in Parsons on Contracts, 253: "As all contracts which provide that anything shall be done which is distinctly prohibited by law, or morality, or public policy, are void, so he who advances money in consideration of a promise or undertaking to do such a thing, may, *at any time before it is done*, rescind the contract, *and prevent the thing from being done*, and recover back his money. But it would seem obvious that *if he delays rescinding until his rescission is inoperative, and the thing will still be done, although the contract, at the time of the rescission, was in form executory*, it should come under the same rule as any *executed* contract for unlawful purposes; and here the law, in general, refuses to interfere, but leaves *both* parties as they were; unless the case shows that there is a substantial difference between them; the one doing and the other suffering the wrong. And in this case the sufferer may have a remedy, but not the wrong doer."

Judgment affirmed.