SAUERHERING, Respondent, vs. RUEPING and another, Appellants.

*December 18, 1908—January 5, 1909.*

*Insurance: Mutual companies: Authority of officers to sell business:*
*Illegal contracts: Contracts to induce breach of official trust:*
*Legality of object: Effect: Parties in pari delicto: Relief: Exe-*
*cuted contract: Part performance.*

1. The officers of a mutual indemnity insurance company organized
   under the laws of Wisconsin, without capital stock, and au-
   thorized to do business on the assessment plan, cannot sell any
   interest therein.
2. Under the statutes of Wisconsin a change of location of a mutual
   indemnity insurance company can be made only by a vote of
   at least one half of the members of the company at a meeting
   regularly called. In pursuance of an alleged agreement where-
   by plaintiff expected to secure by purchase from defendants,
   who were officers and directors thereof, claims against a mutual
   indemnity insurance company organized without capital stock
   and authorized to do business on the assessment plan, the right
   to manipulate the company in his own interest by getting con-
   trol of the directors and officers to be secured by the removal
   of some and the election of others of his own choosing, and to
   thereby secure the removal of such company to the plaintiff's
   city, the resignations of one defendant and a sufficient number
   of directors were tendered and accepted, and the management
   and control of the company by such and other manipulations
   was turned over, or attempted to be turned over, to the plaint-
   iff, the purchase of control being the main object. *Held*, that
   such agreement was illegal and contrary to public policy and
   good morals.
3. Such contract, if binding, bound the defendants to secure the
   removal of location of the company, regardless of whether such
   removal was for the interest of the members or not, and was
   in conflict with the duty which the defendants owed to the mem-
   bers of the company, who were entitled to the exercise of the
   judgment and discretion vested in defendants as its officers.
4. Defendants' influence as officers and members of such mutual in-
   demnity insurance company was not the subject of barter or
   sale, and the agreement to exercise such influence was illegal.
5. In such case, it appearing that plaintiff was in possession of all
   the facts, and knew the company was a mutual assessment com-

pany and without capital stock, plaintiff and defendants were *in pari delicto*, and the law therefore should not afford plaintiff relief.

6. In such case, where the alleged contract was performed, in part at least, on both sides, neither party is entitled to relief.

BARNES and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed*.

This action was brought to recover $3,000. The complaint charges that on the 29th day of November, 1905, plaintiff and defendants entered into an agreement by the terms of which defendants sold to plaintiff a one-half interest in the Wisconsin Health & Accident Company, a corporation of the city of Fond du Lac, and agreed to change the principal office of said company from Fond du Lac to Wausau, Wisconsin; that plaintiff was to pay for such interest $3,000—$2,000 in cash and $1,000 in a promissory note payable in ten days, which note was executed and delivered and the $2,000 paid. It was further alleged that said corporation was a mutual company organized under the laws of Wisconsin and authorized to do business upon the assessment plan and had no capital stock, and that defendants were president and vice-president, respectively, of said company; that the agreement was void for the reason that defendants were not the owners of the company and had no interest therein which they could sell to plaintiff, and that there was no consideration for the agreement; that shortly after the transaction plaintiff discovered that defendants had no interest and no right to convey any interest in said corporation and demanded return of his money. The defendants denied that any agreement was made on the 29th day of November, 1905, and denied the terms of the agreement as alleged in the complaint, but set up that an agreement was made on the 6th day of January, 1906, the true intent and meaning of which was that defendants agreed to and did convey to the plaintiff an

interest in certain claims and indebtedness which defendants owned against the Wisconsin Health & Accident Company for moneys advanced to said company and coming from it for services rendered and otherwise, and that defendants further agreed to assist in procuring the resignation of directors of said corporation and the appointment of others in their stead, and to assist in the removal of the principal office of said company from the city of Fond du Lac to the city of Wausau, and to permit the plaintiff to attach to policies of insurance thereafter to be issued and theretofore issued a stipulation to the effect that the assured might assign to St. Mary's Hospital, at Wausau, any liabilities or moneys that might be owing to said assured by reason of policies of insurance, the same being for the benefit of plaintiff, he being at the time a practicing physician, in consideration whereof plaintiff agreed to pay said $3,000. The answer specifically denies that defendants represented or agreed that they would sell a one-half interest in said company, except as in the manner set up in their answer. The defendants set up a counterclaim demanding judgment on the $1,000 note and that the complaint be dismissed. Plaintiff replied to the counterclaim, admitting the execution of the note and denying the other material allegations thereof, and setting up affirmative matter charging want of consideration. The jury returned the following verdict:

"(1) Did the parties agree on November 29, 1905, that the defendants sold and would transfer a half interest in the Wisconsin Health & Accident Company to the plaintiff and to effect a removal of the principal office of said company to Wausau in consideration for the $2,000 paid by the plaintiff to the defendants? A. Yes.

"(2) Did the parties agree on January 6, 1906, that in consideration of the payment by the plaintiff of $2,000, and the further payment by him of $1,000 as evidenced by his note to the defendants, that the defendants transferred to the plaintiff their claims against said company for money

advanced and services rendered by them to said company, and would assist in effecting a removal of the principal office of said company to Wausau?     A. No."

Plaintiff moved for judgment upon the verdict, and the defendants moved that the answers in the verdict be changed and for judgment notwithstanding the verdict and for a new trial.     The several motions of defendants were denied and the counterclaim dismissed, and the motion of the plaintiff granted and judgment rendered in his favor for the sum of $2,196, together with $90.92 costs, from which judgment this appeal was taken.

For the appellants there were briefs by *Doyle & Hardgrove,* and oral argument by *J. G. Hardgrove.*

For the respondent there was a brief by *Brown, Pradt, Genrich & Anderson,* attorneys, and *W. H. Mylrea,* of counsel, and oral argument by *F. W. Genrich.*

KERWIN, J.     The jury found that the parties agreed November 29, 1905, that the defendants would sell and transfer a half interest in the Wisconsin Health & Accident Company to the plaintiff and effect the removal of the principal office of such company to Wausau, Wisconsin, in consideration of $2,000 paid by plaintiff to defendants.     The evidence shows without substantial dispute that the defendants agreed to transfer their claims against the company for services performed and money expended in the organization of the company, and that they would also secure the removal of the principal office of such company from Fond du Lac to Wausau, Wisconsin, and make certain changes in the officers of such company by procuring the resignation of directors and the election of others in their stead; that this scheme was carried out to the extent of causing four directors to resign and the election, or attempted election, of four others named by the plaintiff in their respective places; that the general management of the company was turned over to the plaintiff,

whose place of business was Wausau, Wisconsin, he being a practicing physician there and desirous of operating said Wisconsin Health & Accident Company in connection with his hospital work at Wausau and for his own personal interest; that he advertised the company at Wausau, Wisconsin, and manipulated it in his own interest from the time of the agreement, November 29, 1905, down to about the time of the commencement of this action, a period of more than two months. It is further established by the evidence that on January 6, 1906, the parties met in furtherance of the scheme, and the plaintiff, in addition to the $2,000 paid November 29, 1905, executed and delivered to the defendants his promissory note for $1,000 payable in ten days from date as part consideration on his part for an interest in or control of the company and transfer of the principal office to Wausau. This note was not paid when it became due, the plaintiff claiming that the defendants had not promptly complied with their contract in the removal of directors and election of others and change of the principal office in accordance with the agreement, and the defendants claiming that the plaintiff was at fault in not paying the note when it fell due.

The Wisconsin Health & Accident Company was a mutual indemnity insurance company organized under the laws of Wisconsin, without capital stock, and authorized to do business on the assessment plan. The defendants, therefore, could not sell a half interest or any interest therein, which was well known to the plaintiff when the agreement of November 29, 1905, was made, and particularly when the note was given, January 6, 1906. No claim is made that any fraud or deception was used by the defendants, but, on the contrary, the plaintiff was given access to the books, records, and business of the company and fully examined them.

The evidence further establishes that at the time the agreement was made the defendants had expended considerable money and performed services in the organization of the

company, and had become liable at the bank by indorsements for money thus expended, and were desirous of being relieved from such liability and disposing of their claims against the company. So it appears from the evidence that the interest which plaintiff expected to get by the purchase was the defendants' claims against the company and the right to manipulate the company in his own interest by getting control of the directors and officers by the removal of some and the election of others of his own choosing, and thus secure the change of the principal office to Wausau, Wisconsin. It was talked at the time the agreement was made that the best way to control the company was to keep it indebted to the party who desired the control. The purchase of control was the main object, and this was to be accomplished through purchase of claims, change of officers, and vote to move the location of the principal office to Wausau. The defendant *Rueping* was president and defendant *Schmidt* vice-president.

Under the statutes the change of location could be made only by a vote of at least one half of the members of the company at a meeting regularly called. In pursuance of the alleged agreement the resignations of the defendant *Schmidt* and four directors were tendered and accepted, and the management and control of the company by such and other manipulations turned over, or attempted to be turned over, to plaintiff. Such an agreement, upon well-established principles, is illegal and contrary to public policy and good morals. The defendants could not use their position of trust and confidence as officers of the company to forward their own private interest or the interest of plaintiff. *Forbes v. McDonald,* 54 Cal. 98; *Meacham v. Dow,* 32 Vt. 721. If the contract were binding the defendants would be bound as officers of the company to secure its removal to Wausau, regardless of whether such removal was for the interest of the members or not. It is manifest that such an agreement is illegal and in

conflict with the duty which the defendants owed to the members of the company, who were entitled to the judgment and discretion vested in the defendants as officers. Any agreement which might in any manner hamper or interfere with the free exercise of such discretion is illegal. *Jackson v. Bowman,* 39 Miss. 671. The defendants had nothing which was the subject of sale, except, perhaps, their claims for services and money expended in the company's behalf. But the defendants' influence as officers and members in securing the removal of the location of the principal office to Wausau was what the plaintiff wanted. This was not the subject of barter or sale, and the agreement to exercise such influence was illegal. The agreement placed the defendants in a position where their duties as officers were, or might be, antagonistic to their duties to plaintiff under the contract; hence the contract was void. Greenhood, Public Policy, 292, 293, 294; *Bliss v. Matteson,* 45 N. Y. 22. The agreement involved illegality from the nature of the transaction and was therefore *contra bonos mores.* Greenhood, Public Policy, 338, 336, 337, 306, 156; *Waldo v. Martin,* 4 B. & C. 319; *Noel v. Drake,* 28 Kan. 265; *Parsons v. Thompson,* 1 H. Blackst. 322; *Morse v. Ryan,* 26 Wis. 356. It is clear from the foregoing cases and many others which may be found that the alleged agreement entered into between the plaintiff and defendants was illegal, contrary to the principles of public policy, and should not be enforced, nor should the court relieve the parties from the consequences of their illegal acts.

It is insisted, however, as a basis of recovery on the part of the plaintiff that the parties were not *in pari delicto.* This contention cannot be sustained under the evidence. The plaintiff was in possession of all the facts, knew the company was a mutual assessment company without capital stock, and had knowledge of all the facts which rendered the agreement illegal. Under such circumstances the law will not afford him relief. 9 Cyc. 546, 548; *Miller v. Larson,* 19 Wis.

463; *Melchoir v. McCarty,* 31 Wis. 252; *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492; *Cohn v. Heimbauch,* 86 Wis. 176, 56 N. W. 638. It is claimed, however, by plaintiff that recovery should be had on the principle of right of rescission and recovery of the money paid where the contract remains executory; but the difficulty with that argument is that in the case before us the alleged contract was performed, in part at least, on both sides, and where there is part performance the court will not lend its aid to either party. *Miller v. Larson, supra.* It follows that neither party is entitled to recovery; the plaintiff cannot recover the $2,000 paid, nor the defendants on the $1,000 set up in the counterclaim.

*By the Court.*—The judgment of the court below is reversed, and the action remanded with directions to enter judgment dismissing the complaint and counterclaim.

BARNES, J. (*dissenting*). The real contention on the trial of the case was whether Exhibit 1 expressed the contract between the parties as claimed by the plaintiff, or whether the transaction of January 6th, including the execution of Exhibit 2, expressed such contract as claimed by the defendants. On disputed evidence the jury found in favor of the plaintiff, and upon such finding he was entitled to judgment, unless the contract expressed in Exhibit 1 was in contravention of public policy, or unless his testimony was so inherently incredible as to be unworthy of belief. It is improbable that the plaintiff did not know that a mutual insurance company was not subject to barter and sale, but it is not incredible that he should have been innocent upon the subject. Many people who are intelligent along the lines of their respective callings have very hazy ideas about the fundamental differences between mutual and stock companies. It is likewise improbable that plaintiff was not aware of the fact that the insurance company he was purchasing an interest in was not organized as a stock company, but it is not incredible that he

should be innocent upon the point.    The case was tried by a jury at the home of the defendants, and I think its verdict should stand.

There was no purpose on the part of the buyer or sellers that the company should be looted or that the policy-holders should suffer by the transaction, and there is not a suggestion of any kind in the case that they would suffer.    The plaintiff suggested the lowering of the rates then charged and additional hospital facilities for policy-holders.    He also proposed to make a vigorous endeavor to augment the membership which should reduce the expense ratio per policy-holder of conducting the business.    There is no suggestion that the business of the company would suffer by removing the offices of the company to Wausau.    I should deprecate as quickly as any one any attempt to exploit a mutual insurance company for the illicit gain of its trustees and officers.    I do not think agreements should be avoided as against public policy, however, where theoretical pangs only are alleviated by so doing. Under the great weight of authority the transaction must at least have a tendency to be injurious to the public before the ban of the law operates upon it.    6 Words & Phrases, 5813; 23 Am. & Eng. Ency. of Law (2d ed.) 455, 456, and cases cited.

MARSHALL, J.    I concur in the opinion of Mr. Justice BARNES.