[No. 17198. *En Banc.* August 6, 1923.]

EUGENE R. DAY *et al., Appellants,* v. HECLA MINING COMPANY *et al., Respondents.*[1]

CORPORATIONS (147) — CORPORATE POWERS — HOLDING STOCK IN OTHER CORPORATIONS. Rem. Comp. Stat., § 3810, permitting a corporation to hold stock in another corporation applies to pre-existing corporations whose articles have been amended granting such power.

SAME (85) — STOCKHOLDERS — MEETINGS — VOTING TRUST — VALIDITY — PRESUMPTION. Under Rem. Comp. Stat., § 3810, authorizing a corporation to hold stock in another corporation, and to exercise all the rights and powers of other stockholders, it is not against public policy for two companies each holding half of the corporation stock of a holding company, to enter into a voting trust agreement by which two directors of the holding company were to be nominated by each of the companies and the fifth director to be alternately nominated by the companies annually.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 3, 1922, upon findings in favor of the defendants, in an action for equitable relief. Affirmed.

*W. H. Plummer, John H. Wourms, Donworth, Todd & Higgins (Hyman Zettler,* of counsel), for appellants.

*Turner, Nuzum & Nuzum, Wakefield & Witherspoon, John P. Gray,* and *J. E. Gyde,* for respondents.

PEMBERTON, J.—The appellants are minority stockholders of the Hecla Mining Company, a corporation. The Bunker Hill & Sullivan Mining & Concentrating Company, a corporation, purchased a certain mine known as the Star mine, adjacent to the mining property of the Hecla Mining Company. After extended negotiations, the Hecla Mining Company, through its board of directors, purchased a half interest in the Star mine property, paying therefor one-half of the

[1]Reported in 217 Pac. 1.

agreed purchase price paid by the Bunker Hill & Sullivan Mining & Concentrating Company, and entered jointly with the Bunker Hill Company upon the development and operation of the Star property. The Sullivan Mining Company was organized as a holding company, its capital stock being owned jointly by the Hecla Mining Company and the Bunker Hill & Sullivan Mining & Concentrating Company, and a voting trust agreement was entered into between these two corporations, in part reading as follows:

"At the annual stockholders meetings of said SULLIVAN COMPANY said stock shall be voted by said Voting Trustees or a majority of them, so as to elect two directors of said SULLIVAN COMPANY who shall be selected, designated and nominated by said BUNKER HILL COMPANY, and two directors who shall be selected, designated and nominated by said HECLA COMPANY and the fifth director shall be selected, designated and nominated alternately for a one year period by either said BUNKER HILL COMPANY or said HECLA COMPANY, as the case may be, said BUNKER HILL COMPANY to have the right to designate said director for the first year following the entering into of this agreement, and the HECLA COMPANY for the second year, and so on alternately."

Appellants, in their complaint, charge that the Star mine is worthless and that the transaction will inevitably result in loss to the Hecla Mining Company, even though the Bunker Hill Company may make a profit out of the smelting of the ores from the mine.

At the time of the trial, appellants, however, waived the contest on the issues of fraud, and are relying solely upon the legal propositions that the transaction is illegal and against public policy and beyond the powers of the Hecla Mining Company.

It is contended that the law of 1905 (Laws of 1905, p. 51); Rem. Comp. Stat., § 3810 [P. C. § 4510], per-

mitting a corporation to hold stock in another corporation would not apply to corporations then organized until after the articles of incorporation have been amended granting this power. The articles of incorporation of the Hecla Mining Company have since been amended in this regard, and therefore there can be no doubt but what this company has authority to own stock in the Sullivan Mining Company.

It is also contended that a voting trust arrangement is against public policy and illegal. We said in the case of *Clark v. Foster,* 98 Wash. 241, 167 Pac. 908:

" 'Public policy' is not a resort where argument fails. It is itself an argument, and is never advanced in private controversies unless it is plain that the interest of the whole public will be jeopardized, or a statute will be violated, by affirming the questioned contract. . . .

"It may be said, finally, that voting trust agreements are valid and binding, if based upon a sufficient consideration, if they do not contravene public policy or a positive prohibitory statute, and if they do not sound in fraud or wrong against the stockholders."

It is the contention of appellants that the powers of a corporation must be exercised by its board of trustees, and any attempt to limit by contract, or to share with others, the power of the board of trustees, or of any future board over the corporate property, is illegal. In support of this contention, our attention is called to the following cases: *Manson v. Curtis,* 223 N. Y. 313, 119 N. E. 559; *Hyams v. Old Dominion Co.,* 113 Me. 337, 93 Atl. 747; *West v. Camden,* 135 U. S. 507; *Jackson v. Hooper,* 76 N. J. Eq. 592, 75 Atl. 568; *Rosenthal v. Light,* 185 App. Div. 702, 173 N. Y. Supp. 743; *Funkhouser v. Capps,* 174 S. W. (Tex. Civ. App.) 897; *Fabre v. O'Donohue,* 185 App. Div. 779, 173 N. Y. Supp. 472; *Seitz v. Michel,* 148 Minn. 80, 181 N. W.

102; *Sauerhering v. Rueping,* 137 Wis. 407, 119 N. W.
184; *Flaherty v. Cary,* 62 App. Div. 116, 70 N. Y. Supp.
951; *Burke v. Concord R. R.,* 61 N. H. 160; *People v.
North River Sugar Refining Co.,* 121 N. Y. 582, 24 N.
E. 834; *State ex rel. Attorney General v. Standard Oil
Co.,* 30 N. E. (Ohio) 279; *Bishop v. American Pre-
servers Co.,* 157 Ill. 284, 41 N. E. 765; *Whittenton Mills
v. Upton,* 10 Gray (Mass.) 582, 71 Am. Dec. 681;
*Sabine Tram Co. v. Bancroft,* 16 Tex. Civ. App. 170,
40 S. W. 837; *Aurora State Bank v. Oliver,* 62 Mo. App.
390; *Merchant's National Bank v. Standard Wagon
Co.,* 9 Ohio Dec. 380; *Mallory v. Hanauer Oil Works,*
86 Tenn. 598, 8 S. W. 396. This was the rule announced
in the case of *Parsons v. Tacoma Smelting & Refining
Co.,* 25 Wash. 492, 65 Pac. 765, wherein this court held
such ownership invalid and without statutory author-
ity. The legislature, however, in 1905 changed the
public policy in this state, as follows:

"That any corporation heretofore or hereafter or-
ganized under the laws of this state or of any other
state or territory of the United States and doing busi-
ness in this state shall have power and authority to
subscribe for, acquire by purchase or otherwise and
to own, hold, sell, assign and transfer shares of the
capital stock of any other corporation and by its duly
authorized officer or proxy to vote such shares at any
and all stockholders' meetings of the corporation
whose shares are so held, and to have and exercise all
the rights, powers and privileges of any other stock-
holder, except that such corporate owner cannot be a
member of the board of trustees." Laws of 1905, p.
51 (Rem. Comp. Stat., § 3810).

The mere ownership of stock by a corporation in
another corporation places the control of the property
of the latter beyond the exclusive control of the board
of trustees of the former, and the law of 1905, *supra,*
allows such ownership. This law authorizes the cor-

porate stockholders to "have and exercise all the rights, powers and privileges of other stockholders," and one of the rights, powers and privileges of other stockholders is the right to enter into a voting trust arrangement, and such voting trust arrangement is valid and binding when supported by sufficient consideration. The object of the voting trust determines the question of its legality.

"If the object of the voting trust is the accomplishment of some unlawful end, it is void. It has been so held in respect of agreements designed to effect the practical merger of two or more corporations in defiance of law, the giving to one corporation of control over another, the formation of a monopoly, the defeat of competition, and the restraint of trade. And the agreement is likewise void where its object is not in the interests of the corporation and for the benefit of all the stockholders, but to give some unfair advantage to a party or parties to the agreement." 14 C. J. 916.

In this case, however, it is to be presumed that the trust agreement is for the mutual benefit of the joint owners of this property, and is not designed for an unlawful purpose; and these two corporations owning the Star mine in equal shares have provided a method of joint operation and control for their mutual benefit, providing for the fifth trustee to be nominated alternately by these companies, which seems to be fair to both parties. If, however, this alternate control be fraudulently used to the injury of either of the joint owners, they have their remedy.

The judgment of the lower court is affirmed.

MAIN, C. J., PARKER, BRIDGES, MACKINTOSH, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.