## NEW CENTURY MFG. CO. et al. v. SCHEURER.

### No. 1513—5813.

Commission of Appeals of Texas, Section A. Jan. 27, 1932.

John Davis, of Dallas, for plaintiffs in error.

Winfrey & Lane, of Dallas, for defendant in error.

. HARVEY, J.

The New Century Manufacturing Company is a corporation whose principal office and place of business is at Dallas, Tex. C. H. Scheurer resides in Wichita county, Tex. In the year 1927 the company and Scheurer made and entered into a contract in writing, in Wichita county, which contract reads as follows:

"This agreement, made and entered into this the 4th day of October, 1927, by and between New Century Mfg. Co., Inc., of Dallas, Texas, party of the first part, and C. W. Scheurer, Electra, Texas, party of the second part.

"In consideration of the purchase of 730 cases (or 24 cans to the case or its equivalent in gallons or 5 gallons) of Cell-U-Loyd, a product of New Century Mfg. Company, of Dallas, Texas, at the agreed and stated price of Eighty-Five cents (85¢) per can for black and One Dollar and Five Cents ($1.05) per can for colors, by second party; said first party does hereby appoint said second party to act as sole distributor in the following territory, towit: State of Indiana, quota to begin April 1st, 1928, 4-1-28.

"Second party has hereby made partial payment to party of the first part and to the authorized representative of party of the first part of said annual quantity requirement of $1752.00 Dollars ($1752.00), the receipt of which is hereby acknowledged, and it is understood and agreed that said payment represents and is in payment of Ten Cents (10¢) per can on said quantity, the balance to be paid to the New Century Mfg. Co., Inc., of Dallas, Texas, at its office in Dallas, Dallas County, Texas. Said payment to be made at the aforesaid place at the time of ordering the goods unless other arangements are made with New Century Mfg. Co., Inc., of Dallas, Texas.

"It is agreed and understood that if party of the second part performs his part of this contract, Ten Cents (10¢) per can of each invoice is to be deducted from the face thereof so that when the full first annual quantity requirements under the terms of this contract have been fulfilled, the full amount of said deposit will have been returned in this manner, but should party of the second part fail to order and pay for the quantity specified herein, and at the time and in the manner specified herein, the said deposited sum and any balance thereof remaining unaccounted for by the terms of this contract, shall be retained by party of the first part as liquidated damages to it to reimburse said party for losses sustained by failure to work the sales territory.

"It is agreed and understood that the prices heretofore stated shall be f. o. b. Dallas, Texas, and not subject to discount of any nature, and it is also understood and agreed that these cans of enamel are purchased for the purpose of re-sale and that same shall be sold by party of the second part, so as to retail to the ultimate consumer or customer at the price of $2.50 per can for Cell-U-Loyd Enamel Black, $2.75 for Cell-U-Loyd Enamel Colors.

"It is agreed and understood that party of the second part hereby agrees and promises to actively cover and handle the promotion of sales in a thorough and efficient manner over the entire assigned territory hereinafter specified.

"It is understood and agreed that at the expiration of one year from date hereof, if party of the second part shall have fully performed the terms of this contract, and shall have purchased and paid for on the pro-rata quantities for time purchases of the merchandise herein specified, that no further deposit of a like sum herewith deposited and referred to in Paragraph Two hereof shall be required of party of the second part.

"It is understood and agreed that party

of the first part shall not be responsible to nor liable to party of the second part in any manner whatsoever for any suits or alleged suits for damages either fanciful or real brought by any party against party of the second part, nor be liable to party of the second part for the defense of any suits brought by any customer or consumer of Cell-U-Loyd Enamel products against party of the second part on account of or alleged to be on account of any acts or promises made by party of the second part, his agents, servants or employees or any sub-agents employed by party of the second part, nor for any acts of negligence or representations made by party of the second part, his agents, servants or employees or sub-agents, not contained in the authentic literature printed and sent by party of the first part to consumers and customers of party of the second part, nor shall a specific inclusion of the protection of the party of the first part herewith for the acts specified herewith be taken and construed by the party of the second part as an exclusion of all others. Party of the second part hereby agrees and covenants with party of the first part to assist and cooperate with party of the first part in the investigation and preparation of all suits brought by customers of party of the second part against party of the first part, wherein the allegations are confined to either a fancied or real cause of action based on the specific representations contained in the authentic published literature of party of the first part issued from and bearing its name at its office in Dallas, Texas.

"It is further understood and agreed that party of the second part in consideration of the granting and conveyance of said aforesaid exclusive sales, rights, agencies and privileges, agrees to purchase from the party of the first part at the price specified herein, and in the manner specified herein, not less than the above named quantities and glasses of enamel as above specified within one year beginning from date of this contract as shown above, ordering and paying each month for a pro rata quantity of the entire specified annual quantity. The pro rata quantity ordered and paid for each month to be proportioned to the months of the year, and the amounts so determined to be ordered and paid for each month to be so arrived at. In this connection, it is hereby understood and agreed that time of purchase and quantity of purchase each month is of the essence of this contract, and that upon failure or default in the time or quantity of purchase on any one month during the first year that this contract may be voided at the option of party of the first part.

"It is also understood and agreed in this connection with respect to time and quantity of purchase that party of the second part shall take over and supply all sub-agents and dealers now active in the above specified territory.

"It is agreed and understood that party of the first part is to give credit to the account of party of the second part for all goods shipped directly into the above specified territory, at prices over and above Eighty-five Cents (85¢) per can for Cell-U-Loyd Enamel Black and One Dollar and Five Cents ($1.05) per can for Cell-U-Loyd Enamel Colors and party of the first part further agrees at its own expense to keep and maintain proper records and accounts of all sales made direct from its office and to furnish free of costs statements in writing to party of the second part on or before the 10th day of each month during the life of this contract, together with remittances to cover said credit.

"It is agreed and understood that party of the first part shall not ship goods into the above named territory except to party of the second part or his sub-agents or dealers, and first party further agrees to fill and ship all orders promptly upon receipt of same.

"This contract shall remain in full force and effect forever, so long as there is no default in any of the provisions contained herein.

"Party of the second part shall have the right to sell or assign this contract and the rights accruing to them hereunder or any part thereof, but hereby agrees to give written notice of said sale or assignment to party of the first part at its office in Dallas, Texas, naming the purchaser or assignee of said contract. It being understood in this connection that the law of assignments applicable in the State where the assignment is made shall apply to party of the second part hereto after said assignment or sale."

The present suit, according to the averments of the plaintiff's petition, is of a dual nature. In one respect the suit is for cancellation of the above contract, on account of fraudulent representations of the company relative to the quality of the paint and the formula by which it was made, and to recover the unused balance of the $1,752 which, in conformity to the terms of the contract, Scheurer had paid to the company. In another respect, the suit is for cancellation of the contract, on the ground that the contract violates the federal anti-trust statutes, commonly known as the Sherman Act (15 USCA §§ 1–7, 15), and to recover the above mentioned advancement.

The case was tried to a jury on special issues, resulting in a judgment for Scheurer for the unused balance of said advancement. After the above instrument was executed, the contract was partly performed by both parties in this: Scheurer bought from the company about $250 worth of the paint, and resold it, under the terms of the contract, to merchants in Indiana. Shortly after this, Scheurer was advised by his attorney that the contract violated the federal anti-trust statutes. He thereupon repudiated the contract. The judgment rendered by the trial court, in favor of

Scheurer, was for the $1,752, which had been advanced by him, less the purchase price of the paint which he had bought and resold under the contract. The Court of Civil Appeals affirmed that judgment. 30 S.W.(2d) 388.

■ Provisions contained in the contract fall under the condemnation of the federal anti-trust statutes (chapter 1, title 15, United States Code [15 USCA § 1 et seq.]), and the contract is therefore illegal. Both parties to this suit contend, and in effect concede, that this is so. We shall, therefore, devote our attention to other matters. The defendant in error contends that, notwithstanding the contract is illegal, he does not stand in pari delicto with the company, and, having repudiated the contract, he was entitled to recover the unused balance of the advancement made by him to the company, under the contract. The facts show that the defendant in error voluntarily agreed to the provisions which render the contract illegal, and undertook to carry them out. The misrepresentations made by the company, and upon which the defendant in error relied, did not relate to the illegal features of the contract, but to the quality of the paint and the formula of its manufacture. In respect of the matter of agreeing to the illegal provisions of the contract, and undertaking to put them into execution, the parties were upon an equal footing. Both, so far as the record shows, were ignorant of the fact that their contract involved a violation of law. The defendant in error, as well as the company, violated the federal statutes, and became subject to the punishment there prescribed. The parties are in pari delicto. Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320.

■■ The question arises as to whether the fact that the defendant in error repudiated the contract before the illegal purpose was carried out to the full extent contemplated by the contract, gives his claim for repayment of the advancement in question a standing in court. We do not think it does. The doctrine has been laid down that where one of the parties to an illegal contract repudiates the contract after the illegal purpose has been partially executed, courts will not aid him to recover for advancements which he made in furtherance of the illegal contract, but will leave both parties in the situation they placed themselves. Hooker v. De Palos, 28 Ohio St. 251; Ullman v. St. Louis Fair Ass'n, 167 Mo. 273, 66 S. W. 949, 56 L. R. A. 606; Ed-

wards v. Goldsboro, 141 N. C. 60, 53 S. E. 652, 4 L. R. A. (N. S.) 589, 8 Ann. Cas. 479; Sauerhering v. Rueping, 137 Wis. 407, 119 N. W. 184; 13 C. J. p. 501; 6 R. C. L. p. 432. While this precise doctrine has not, so far as we have been able to discover, been announced by our courts, we regard the doctrine as sound and in keeping with the trend of decision in this state. See Washer v. Smyer, supra; also, Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; and similar cases. The illegal purpose of the contract under consideration here was to control the retail price at which the paint, to be purchased by the defendant in error, was to be sold in the state of Indiana. According to the terms of the contract, the advancement in question seems to partake, in some respects, of the nature of security, for the performance by the defendant in error of his agreement to carry out this unlawful purpose. But however this may be, it is quite clear that the advancement was made in furtherance of the illegal purpose of the contract, and was so intimately connected with the prosecution of such purpose as to be inseparable therefrom. Some authorities hold that where an illegal contract is repudiated by one of the parties while the illegal purpose remains executory, he may recover for money advanced to the other under the contract, as for money had and received. It is said that, in such a case, public policy calls for aid to the repudiating party, as a means of discouraging illegal contracts. Be that as it may, in a case like the present one, where the repudiation occurs after the unlawful deed is done, even though the entire course of unlawful conduct contemplated by the contract is not run, no reasons of public policy are discerned for aiding the repudiating party to recover for money which has been paid to the other in furtherance of the illegal contract. The putting of the illegal purpose into execution, to any extent whatsoever, is a public wrong, and courts will not speculate on the extent of resulting injury to the public.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals, be reversed, and that judgment be here rendered to the effect that the defendant in error take nothing.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.