## LOGGINS v. STEWART et al.
### No. 4622.

Court of Civil Appeals of Texas. El Paso.
Jan. 19, 1949.

Rehearing Denied Feb. 16, 1949.

Ernest Guinn, of El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, of El Paso, for appellees.

McGILL, Justice.

On September 6, 1947, H. W. Loggins died in El Paso County, leaving an estate consisting of real and personal property situated in El Paso County. He left a written will in which appellee Mrs. Florine Loggins Stewart was appointed Independent Executrix. Appellant, Mrs. Clementine Loggins, is the surviving widow of H. W. Loggins, and appellees Mrs. Florine Loggins Stewart and Mrs. Lola Hampson are his surviving daughters by a former marriage. We shall sometimes refer to the daughters as Florine and Lola.

This controversy arose over settlement of the estate of H. W. Loggins. Two suits were filed in the 41st Judicial District Court of El Paso County, one by appellant and one by appellees. The suits were consolidated by the court. Appellees abandoned certain of their pleadings in each suit. Appellant introduced and relied on such pleadings as having evidentiary value in support of her answer to appellees' asserted defense to her cause of action and to defeat appellees' cross-action. We shall hereafter refer to these pleadings in this connection.

A rather full summary of the substance of the pleadings on which the case was tried is deemed advisable in order to show the nature of the suit and the points involved.

Appellant claimed a homestead right in 52.93 acres of land in El Paso County occupied by her and her deceased husband as their homestead at the time of his death. She alleged that this property was his separate property; that appellee Florine had been appointed independent executrix of the estate of H. W. Loggins, but had failed to file an inventory; that as independent executrix she had appropriated to her use and withheld from appellant certain property of the estate consisting of crops raised on the homestead for which she had collected a sum in excess of $3000.00; bank accounts in the State National Bank of El Paso in excess of $5000.00, and other property of the estate unknown to her. She prayed for a full accounting and that she recover all property of the estate which she owned or in which she had an interest. Appellees answered that the land in question was part of an 80 acre tract which was purchased by H. W. Loggins during his marriage with Tela Loggins, the mother of appellees Florine and Lola, and was community property of such marriage; that Tela Loggins died intestate and her one-half community interest in such tract thereby passed to her daughters; that after their mother's death, but before his marriage to appellant, their father contracted to sell 25 acres of the 80 acre tract to A. L. Bartz, and 25 acres thereof was partitioned to Bartz by decree of the 65th Judicial District Court of El Paso County on November 6, 1916, and was by such decree charged against the undivided interest of H. W. Loggins in the 80 acre tract, leaving title to the 55 acres remaining vested 15/55 in H. W. Loggins and 40/55 in said appellees; that a portion of the 55 acres was taken by an Irrigation District, leaving 52.91 acres which at the time of the marriage of appellant and H. W. Loggins was owned in such proportions by H. W. Loggins and his two daughters. They alleged that after the death of H. W. Loggins appellant continued to reside on the property; that a controversy arose as to her rights in the property and the estate and on December 2, 1947 a settlement was made with her by appellee Florine indivi-

dually and as executrix of the estate, joined pro forma by her husband, whereby all matters in controversy in the suit were compromised and settled; that appellant in full settlement of all claims against the estate of H. W. Loggins agreed to accept certain United States bonds, insurance moneys, checking account and an automobile, plus $1000.00 in cash, and agreed to move from the property by December 15, 1947; that it was further agreed that should it be necessary for appellant to remain in El Paso County after December 15, 1947, she should be allowed $3.00 per day for any part of sixteen days that she should so remain, and it was agreed that all matters in controversy were settled and that appellant would make no further claim of any title or interest in the property of the estate. They attached a copy of such agreement, alleged that they had fully performed it and that appellant had accepted and retained the benefits of it and was estopped to question its binding effect; further that appellant had disregarded such agreement and refused to remove from the property. They prayed that appellant take nothing and that said agreement be enforced by judgment for possession of the property and for the reasonable rental value thereof subsequent to December 15, 1947, which they alleged to be $9.00 per day. By her second Supplemental Petition appellant alleged that there never existed any doubt as to her homestead rights or community property rights in the estate of H. W. Loggins, deceased; that there never was any actual dispute between the parties to the alleged agreement of December 2, 1947; that she was induced to sign the agreement through representation that all rights to a homestead and community interest in the estate of her husband had been taken away from her by an alleged ante-nuptial agreement; that the agreement of December 2 was intended to carry out such illegal ante-nuptial agreement; that by the compromise agreement appellees sought to enforce such ante-nuptial agreement; that the United States bonds, insurance money and automobile referred to in the compromise agreement constituted the consideration which appellees had asserted she had accepted under

the ante-nuptial agreement which deprived her of her homestead and community property rights as shown by appellees' original pleadings, and by their contentions in open court; that the alleged ante-nuptial agreement was illegal and its illegality was necessarily carried into the compromise agreement and nullified and vitiated it; that appellees sought to enter into the compromise agreement under the belief that the ante-nuptial agreement was valid and binding on appellant. She denied that there was ever any performance by appellees of the agreement of December 2, 1947, or that they had ever delivered possession of any property to her, and alleged a want or failure of consideration. By trial amendment appellees alleged that if the $1000.00 cash mentioned in the agreement of December 2nd and an additional $48.00 allowed appellant was paid to her attorney to be held by him and paid to her when she moved from the homestead property, and if she had not received such sums, her failure to do so resulted solely from her breach of the contract.

Trial to the court resulted in a judgment adjudicating that appellant had no interest in the estate of H. W. Loggins and denying her any relief. The judgment awarded title and possession of the 52.91 acres with all personal property thereon (except some small items given appellant by the agreement of December 2nd) to appellees, and provided that appellees recover from appellant $325.00 as rental for the property from December 15, 1947. Appellant excepted to the judgment and has perfected her appeal.

Appellant predicates her appeal on one point, i. e., the trial court erred in holding that the agreement of December 2, 1947 was based on ample consideration and is conclusive and binding upon the parties and settled and adjudicated all matters at issue. Three reasons are stated in support of this point, i. e., the agreement rests in part on an asserted illegal agreement; the agreement was never executed; the agreement is invalid because of want or failure of consideration.

In accordance with appellant's request the court filed findings and conclusions which were not challenged by appellant ex-

cept by her exception to the judgment. No additional findings were requested. The court found that H. W. Loggins married appellant on October 19, 1945; that he died September 6, 1947 leaving a written will by which he devised all of his property to his daughters by a former marriage, Florine and Lola, and appointed Florine independent executrix; that the will was probated and the executrix qualified; that at the time of his death H. W. Loggins owned a 15/55 undivided interest and his daughters an undivided 40/55 interest in the 52.91 acres in question; that after the death of H. W. Loggins a dispute arose between appellant and the appellee daughters as to their respective interests in his estate; that on December 2, 1947, appellant and appellee Florine, individually and as independent executrix of the estate joined by her husband entered into the following written settlement agreement which was supported by ample consideration:

"Whereas Clementine Loggins, has settled all claims against the Estate of H. W. Loggins, Deceased, as shown herein:

Now, Therefore, it is agreed by and between Mrs. Clementine Loggins and Florine Loggins Stewart, as follows:

"The said Clementine Loggins, in full settlement of the Estate, accepts the United States Bonds heretofore delivered to her aggregating Fifty-three Hundred (5300.00) Dollars and the insurance already collected by her and the Checking Account in the State National Bank and the automobile already delivered to her; hereby agreeing that she will make no further claim against the Estate or against the crop and will remove from Fifty-two acre Loggins Homestead near Canutillo, El Paso County, Texas, removing only the following to wit: Chickens and small brooder, 1 Cow and the said furniture consisting of One Washing Machine and two rugs.

"The said Clementine Loggins, also will deliver possession on or before December 15, 1947 and now acknowledge receipt of One Thousand ($1000.00) Dollars Cash in full settlement of any and all claims against the Loggins Estate of every kind and character; now expressly releasing said Estate in full.

"Florine Loggins Stewart, individually and as Independent Executor of the Estate of H. W. Loggins, Deceased, joined pro forma by her husband, J. O. Stewart, accepts said settlement fully and completely and is making the above delivery, including the One Thousand ($1000.00) Check, as full and final settlement of all rights and claims of the said Clementine Loggins, against the Estate, and any and all property thereof.

"It is further agreed that should Mrs. Clementine Loggins find it necessary to remain in El Paso or in El Paso County after the 15th of December, 1947, and after the delivery of possession of the Loggins Homestead, then in that event, she should be allowed Three ($3.00) Dollars per day for sixteen (16) days or any part thereof that she may remain in said City and County. It is agreed that all matters in controversy have been settled between the parties and that the said Clementine Loggins makes no further claim of any title or interest in the property of said Estate."

That the reasonable rental value of the house upon the property in dispute was $50.00 per month, or $325.00 from December 15, 1947, to date of judgment, and that appellant had remained in possession thereof from December 15, 1947 to the time of trial. The court concluded that all matters at issue between the parties were settled by such agreement and that appellees were entitled to title and possession of the entire tract of land and the personal property of the estate except that given to appellant by the agreement.

It is at once apparent from the pleadings above outlined on which the case was tried that appellees relied solely on the agreement of December 2, 1947, not only to defeat appellant's alleged cause of action, but also to establish their asserted cross-action. It is also apparent that appellant relied on an alleged illegal ante-nuptial agreement—not to establish her cause of action but to defeat appellees' asserted defense thereto, and their cross-action. In other words, appellant relied on the alleged ante-nuptial agreement to nullify the settlement agreement of December 2nd on which appellees rely. The following

quotation from Fred Miller Brewing Co. v. Coonrod, Tex.Civ.App., 230 S.W. 1099, 1102, Wr.Ref., states the applicable rule:

"When parties enter into illegal contracts they are alike unfavored. The courts are no more in favor of aiding the one to enforce such a contract than they are disposed in favor of the one who by such a plea uses it to escape his obligation to the one with whom he was linked to violate the law. As said in Hall v. Edwards, Tex.Com.App., 222 S.W. [167], 169: 'Plaintiff in error not seeking the enforcement of the contract, and not invoking it to sustain a remedy, its illegality is no defense. To permit this defense, under the facts herein, would be to create a right or title in defendant in error dependent entirely upon such contract. It would, in effect, be to enforce the contract on her behalf, enabling her to reap a benefit thereunder. The same principles which govern courts in declining to enforce an illegal contract in aid of a plaintiff's title inhibit its use to create a title in a defendant. Wooden v. Shotwell, 24 N.J.L. 789' ".

The Rule is applicable even though the fact that the parties to the compromise agreement of December 2 thought that the ante-nuptial agreement was valid and binding entered into the negotiations leading to the execution of the agreement of December 2 and was part of the consideration which induced appellant to sign it. Apparently it was appellant's contention that although the ante-nuptial agreement did not deprive her of her homestead rights in the separate property of her deceased husband or of her interest in the community estate, she was entitled to retain the United States bonds, insurance money and automobile which she received by reason of the ante-nuptial agreement. Appellees took the position that appellant having retained the benefits of the ante-nuptial agreement could not question its validity, but that if she could repudiate it she was legally obligated to restore to the estate the benefits she had received from it, and that such property would pass under the will. That such was appellees' position is conclusively shown by their abandoned pleadings, whereby they set up the ante-nuptial agreement and its performance by H. W. Loggins

as a defense to appellant's cause of action and as the basis for their cross-action and by the inventory filed by the executrix of the estate of H. W. Loggins in which it was stated that there was no community property of deceased, he having settled with his surviving widow by pre-nuptial agreement. These pleadings and inventory were introduced in evidence by appellant. In the absence of any explanation they are conclusive on appellees' position as to the ante-nuptial agreement. Pena v. Frost Nat. Bank, Tex.Civ.App., 119 S.W.2d 612, loc. cit. 616, Wr.Ref.; 8 Tex.Jur.Sup.1937–1947, p. 296–7, Sec. 219.

We need not concern ourselves with the merits of these respective contentions. Suffice it to say that there can be little question that a bona fide dispute did exist as to the effect the ante-nuptial agreement had on appellant's homestead rights and her community interest in the property of the estate of H. W. Loggins. It may be conceded that as a matter of law the ante-nuptial agreement was illegal and unenforceable. Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792; Gorman v. Gause, Tex.Com.App., 56 S.W.2d 855.

Whether or not H. W. Loggins, having fully performed such agreement prior to his death, and appellant having repudiated it thereafter, the estate could recover benefits which she received from it is a more doubtful question. See New Century Mfg. Co. v. Scheurer, Tex.Com.App., 45 S.W. 2d 560; 10 Tex.Jur. p. 244, Sec. 140; Vol. XI Tex.Law Review, p. 128, note.

A bona fide dispute which will support an accord may be predicated on a question of law as well as matters of fact. 1 Amer.Jur. p. 250, Sec. 61, Annotated Case 1915-A, 952. It matters not what the law is so long as the contracting parties are honest in their respective beliefs as to what it is.

As we see it the settlement agreement of December 2 was not an attempt by either of the parties to enforce the ante-nuptial agreement. It was entered into for the purpose of compromising and settling any and all rights and obligations which each of the parties thought arose under that agreement. It seems to us that they had a right to do this, and that the

mere fact that part of the consideration for the agreement of December 2 was the same as that of the ante-nuptial agreement did not render the agreement of December 2 illegal. If we should be mistaken in this view, and if the agreement of December 2 was tainted with illegality, yet under the record in this case appellant cannot avail herself of such illegality to defeat appellees' defense to her suit, or their cross-action against her. It is apparent that she entered into such agreement by way of settlement of bona fide controversies which had arisen between the parties as to her interest in the estate of her deceased husband. By the agreement any question as to her right to retain the United States bonds she had received, the insurance money she had collected and the money she had withdrawn from the checking and savings accounts in the State National Bank was put at rest. The agreement also provided that she should receive additional sums totaling $1048.00 which was deposited with her attorney by Florine's husband. In return she relinquished all rights and claims she may have had against the estate of her deceased husband, and obligated herself to vacate the homestead property. The obligations of both parties to this agreement could be enforced without aid or assistance of any part of the ante-nuptial agreement. Appellees sought to so enforce it. Appellant attempted to inject illegality into the agreement in order to relieve herself from its obligations and binding effect. Under the above quoted rule she is not permitted to do this, it matters not whether the agreement be regarded as executed or executory. No valid distinction can be made between such agreement and the check given in Fred Miller Brewing Co. v. Coonrod, supra, payment of which was enforced by the court.

Appellant next contends that the agreement of December 2, 1947, was never executed, since she never received the $1048.00 and therefore such executory accord could not operate as a bar to her cause of action, and was unavailable as a basis for appellees' cross-action, but was revocable at the will of either party. No finding on this issue was requested. It will therefore be presumed to have been found so as to support the judgment if there is evidence to support such finding, the court having found that the agreement was supported by ample consideration. Rule 299, Texas Rules Civil Procedure.

Florine's testimony was sufficient to warrant a finding that Mr. Channell, as appellant's attorney, received the $1048.00 for her unconditionally, and that payment to him was payment to her. However, apart from such implied finding, appellant's contention is without merit. Prior decisions on this question were reviewed by Judge Smedley in Alexander v. Handley, 136 Tex. 110, 146 S.W.2d 740, 743, opinion adopted, and in reference thereto the court said:

"The opinions in some of the cases last above cited contain statements or quotations to the effect that an unexecuted accord is not enforceable by action and that prior to satisfaction an accord is revokable at the pleasure of either party. Neither the decisions made in the cases in which such statements appear nor the authorities cited to sustain the text from which the quotations are taken give support or justification for a rule so broad and unqualified."

The Court then, quoting from Section 417 of the Restatement of the Law of Contracts stated the Rules applicable to a contract to accept in the future a stated performance in satisfaction of an existing contractual duty, among which is:

"(d) If the creditor breaks such a contract, the debtor's original duty is not discharged. The debtor acquires a right of action for damages for the breach, and if specific enforcement of that contract is practicable, he acquires an alternative right to the specific enforcement thereof. If the contract is enforced specifically, his original duty is discharged."

Such rules, says the court, make the obligations of a valid contract of accord binding both upon the debtor and the creditor. If the contract of December 2 was breached, unquestionably it was appellant who breached it, and appellees under the quoted Rule had the right to specifically enforce it.

Appellant's last contention is that the compromise agreement was invalid because of failure, or want of consideration. From what we have said it follows that we

are in accord with the trial court's finding and conclusion that such agreement was supported by ample consideration. Further discussion is deemed unnecessary.

The judgment is affirmed.

PRICE, C. J., and SUTTON, J., concur.